Filed 12/19/24  P. v. Barnes CA4/2
Opinion following transfer from Supreme Court

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>ANTHONY TYRONE BARNES,<br><br>    Defendant and Appellant. | E077878<br><br>(Super. Ct. No. BAF1701103)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Samuel Diaz, Jr., Judge.

Affirmed in part, reversed in part with directions.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Daniel J. Hilton, and Steve Oetting, Deputy Attorneys General, for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

Defendant and appellant Anthony Tyrone Barnes was sentenced to 32 years for convictions stemming from a domestic violence incident. He contends the trial court erroneously denied his request for mental health diversion and that his sentence must be vacated and the matter remanded for resentencing.

In our previous opinion, we rejected defendant's contentions and affirmed the judgment, as corrected. Our Supreme Court granted review of that opinion and held the matter for consideration pending its decision in *People v. Lynch* (2024) 16 Cal.5th 730 (*Lynch*). After *Lynch* was decided, the court vacated our prior opinion and remanded the matter to this court "with directions to vacate its decision and reconsider the cause in light of" *Lynch*.

We have done so after receiving supplemental briefs from the parties limited to *Lynch* and its effect on defendant's sentencing arguments. We affirm the judgment of conviction, vacate defendant's sentence, and remand for resentencing.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant and the victim, B.L., began dating in November 2016, and defendant moved into B.L.'s apartment shortly afterward. They broke up in September 2017, but defendant lived with B.L. while he looked for a new place.

Defendant knocked on B.L.'s door one night and asked if he could sleep in her bed with her. B.L. said she would go sleep on the couch and defendant could sleep in her bed and got up to move to the couch. As she was leaving the bedroom, defendant grabbed her and said he wanted her to sleep with him. Defendant then threw her face-down into the bed and got on top of her. B.L. yelled that she could not breathe, but defendant punched her in the back of the head four or five times while telling her to shut up.

Defendant then jumped off B.L. and left the room. He returned a few minutes later and asked B.L. if she loved him. B.L. said she hated him, so defendant began packing his belongings in B.L.'s closet. Defendant put his things in the living room, but then went back into B.L.'s room while muttering vulgarities and "talking crazy." In between packing his things, defendant punched, choked, and berated B.L., including by telling her repeatedly that he was going to kill her. At one point, defendant choked B.L. so hard that she thought she was going to pass out.

B.L. covertly grabbed her keys, driver's license, and debit card and hid them under her shirt. B.L. tried to leave with her son, but defendant told her to get back into the bed and said she was not going anywhere with her son. B.L. fled from the apartment, ran downstairs, and ran about 100 feet to where her car was parked. She got inside the car but could not start it because she was shaking. Defendant used a spare key to open the car and began trying to pull B.L. out of the car. After punching B.L. five to 10 times, defendant dragged B.L. out of the car by her feet, causing her to land on her back on the ground.

3

Defendant told B.L. to go upstairs and back into the apartment. Although B.L. considered trying to flee, she felt like she had no choice. When they entered the apartment, defendant punched B.L. at least five times in the face and then resumed packing his belongings while yelling at B.L.

At some point (B.L. could not recall when), defendant told her, "Bitch, if you call the cops, I'm going to kill you." Defendant eventually told B.L. to pack his things and put them in a corner. He told B.L. that he was leaving and that she "better have all [his] shit packed neatly in this corner" when he got back. Defendant then left and took B.L.'s car. B.L. immediately ran to a nearby gas station where she asked an employee to call 911.

Defendant was arrested shortly afterward. At the time, he had B.L.'s identification, car keys, and bank card on him.

Defendant was charged and convicted of kidnapping (Pen. Code, § 207, subd. (a); count 1),[1] inflicting injury on a cohabitant after having previously been convicted of domestic violence (§ 273.5, subd. (f ); count 2),[2] committing a criminal threat (§ 422; count 3), and dissuading a witness with force or fear (§ 136.1, subd. (c)(1); count 4). The jury also found that defendant had been convicted of two prior robbery offenses, both of

---

[1] All further statutory references are to the Penal Code.

[2] Defendant was convicted of domestic violence against B.L. At the time of his current offenses, he was on parole for that conviction.

4

which constituted serious felony convictions (§ 667, subd. (a)) and strikes (§§ 667, subds. (b)-(i), 1170.12).

The trial court sentenced defendant as follows: an upper term of eight years for the kidnapping count, doubled to 16 years for the strike; a consecutive term of one-third the midterm (16 months) for the kidnapping count, doubled to two years, eight months for the strike; a consecutive term of one-third the midterm (eight months) for the criminal threat count, doubled to 16 months for the strike; a consecutive term of one-third the midterm (one year) for the dissuading a witness count, doubled for the strike; and two 5-year serious felony enhancements for a total sentence of 32 years in prison. The court also ordered defendant to pay $678.98 in restitution to the California Victim Compensation Board and a $3,000 restitution fine.

III.

DISCUSSION

Defendant contends the trial court erred by (1) denying his request for mental health diversion under section 1001.36, (2) imposing separate sentences on all four counts in violation of section 654, and (3) imposing fines and fees. He also argues his sentence must be vacated and the matter remanded for resentencing under recently enacted Senate Bill No. 567.

A. *Mental Health Diversion*

Before trial, defendant moved for mental health diversion under section 1001.36. He supported the motion with a report from clinical psychologist Dr. Jennifer Bosch. Dr. Bosch explained in her report that defendant had been diagnosed with anxiety disorder, unspecified; schizophrenia; major depressive disorder, recurrent, moderate; and unspecified psychosis not due to a substance or medical condition. Dr. Bosch opined that defendant suffers from a psychotic diagnosis suggestive of a paranoid personality disorder and/or schizophrenia.

Dr. Bosch noted in her report that appellant showed signs of daily symptoms of depression, irritability, agitation, visual and auditory hallucinations, and sleep issues. Defendant told Dr. Bosch that "when not on his medication he is aggressive and fights everyone." He also believes that "deputies are out to get him due to him being put in segregation for no reason and that they are poisoning him through his food." He also claimed that a clinician and nurses tried to infect him and other prisoners with the COVID-19 virus in order to kill them.

According to Dr. Bosch's report, defendant had been placed on administrative segregation due to his aggressive combative behavior, including allegedly stabbing another inmate in the neck. Defendant was temporarily sent to Patton State Hospital. When he returned to jail in November 2019, defendant threatened to kill his attorney.

At the conclusion of her report, Dr. Bosch offered her opinion on defendant's case: "It is this examiner's opinion given the information provided by [defendant] that it is quite possible that at the commission of the crime he was unable to distinguish right from wrong and or the quality of his actions at the time of the offense due to a severe mental illness. It is this examiner's recommendation that [defendant] be referred specifically for a [section] 1026 evaluation to determine if he meets criteria for Not Guilty by Reason of Insanity as this was not the focus of this evaluation."

The trial court denied defendant's request for mental health diversion on the ground that he was "ineligible . . . based on prong six, dangerousness; as well as a finding of unsuitability given his criminal history and the conduct alleged in this case."

Defendant contends both findings were erroneous. We disagree as to the first one and thus need not address the second.

A trial court may grant pretrial diversion if a defendant meets all six statutory requirements. (§ 1001.36, subd. (b)(1)(A)-(F); *People v. Williams* (2021) 63 Cal.App.5th 990, 995.) The only one at issue here is the sixth and final requirement, which is that "the defendant will not pose an unreasonable risk of danger to public safety, as defined in [s]ection 1170.18, if treated in the community." (§ 1001.36, subd. (b)(1)(F).) Section 1170.18, in turn, defines "unreasonable risk of danger to public safety" as an "unreasonable risk that the [defendant] will commit a new violent felony" described in section 667, subdivision (e)(2)(C)(iv). (§ 1170.18, subd. (c).) These enumerated violent felonies, commonly referred to as "super strike offenses," include murder, attempted

7

murder, and any serious or violent felony punishable by death or life imprisonment. (§ 667, subdivision (e)(2)(C)(iv)(I)-(VIII).)

We review a trial court's finding that a defendant is not entitled to mental health diversion because he or she poses an unreasonable risk of committing a super strike for an abuse of discretion. (*People v. Moine* (2021) 62 Cal.App.5th 440, 459; *People v. Pacheco* (2022) 75 Cal.App.5th 207, 213.) A trial court abuses its discretion when its decision is so arbitrary, capricious, or irrational that it exceeds the bounds of reason. (*People v. Pacheco*, *supra*, at p. 213.)

The trial court here reasonably found defendant would pose an unreasonable risk to public safety if granted mental health diversion. Defendant repeatedly threatened to kill B.L. while brutally beating and kidnapping her. When he was arrested, he had B.L.'s identification, car keys, and bank card. While in jail awaiting trial, defendant stabbed another inmate in the neck and threatened to kill his attorney.[3] Although defendant's previous offenses occurred over 25 years before his current offenses, one of his convictions was for domestic battery against B.L., and he was on parole for that conviction at the time he committed his current offenses.

---

[3] These allegations were provided to the trial court through Dr. Bosch's report, and defendant never argued in the trial court that they were inadmissible or inaccurate. He therefore forfeited his evidentiary challenge to the allegations raised for the first time on appeal. (See *People v. Seumanu* (2015) 61 Cal.4th 1293, 1362.)

Under these circumstances, the trial court reasonably found that if treated in the community, defendant posed an unreasonable risk of committing a super strike (e.g., murder, attempted murder, or aggravated kidnapping punishable by life (§ 209, subd. (a).) The trial court therefore did not abuse its discretion by denying defendant's request for mental health diversion.

B. *Consecutive Sentences*

Defendant contends the trial court violated section 654 by imposing consecutive sentences for the criminal threat and dissuading a witness by threat of force counts because they were based on the same act. He also contends the trial court violated section 654 by imposing consecutive sentences for the domestic violence and kidnapping counts because they were incidental to one another.

Although we need not address this issue given our conclusion below that we must vacate defendant's sentence and remand for resentencing due to Senate Bill No. 567's amendments, we elect to resolve the issue to provide guidance to the parties and trial court on remand.

1. *Applicable Law and Standard of Review*

Section 654, subdivision (a) provides in relevant part: "An act or omission that is punishable in different ways by different provisions of law shall be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision."

9

"Section 654 precludes multiple punishments for a single act or indivisible course of conduct. [Citation.]" (*People v. Hester* (2000) 22 Cal.4th 290, 294.) " " " " "Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all of the offenses were incident to one objective, the defendant may [not] be punished . . . for more than one.' " " [Citation.]" (*People v. Jackson* (2016) 1 Cal.5th 269, 354.) "If, on the other hand, defendant harbored 'multiple criminal objectives,' which were independent of and not merely incidental to each other, he may be punished for each statutory violation committed in pursuit of each objective, 'even though the violations shared common acts or were parts of an otherwise indivisible course of conduct.' [Citation.]" (*People v. Harrison* (1989) 48 Cal.3d 321, 335.)

We review a trial court's ruling on whether section 654 applies for substantial evidence. (*People v. McKinzie* (2012) 54 Cal.4th 1302, 1368, disapproved on other grounds in *People v. Scott* (2015) 61 Cal.4th 363, 391, fn. 3.)

2. *Analysis*

Substantial evidence supports the trial court's finding that the criminal threat and dissuading a witness counts were based on different acts with different objectives and thus separately punishable. Defendant incorrectly argues that the charges were based on the same statement, "Bitch, if you call the cops, I'm going to kill you." B.L. testified that defendant repeatedly threatened to kill her over the course of the incident. Her testimony

about his multiple threats supports the trial court's implicit finding that he had different objectives behind different threats.

Defendant told B.L. multiple times that he was going to kill her. He did so while choking and strangling her to the point where she thought she may lose consciousness. He also threatened to kill her while intermittently packing his belongings and hitting and yelling at B.L. The trial court could reasonably find that defendant made these threats to scare B.L. and inflict emotional pain on her (in other words, to criminally threaten her).

The trial court could also reasonably find that defendant's threat, "Bitch, if you call the cops, I'm going to kill you," served another purpose. The trial court could reasonably find that defendant made this threat to pressure B.L. from calling law enforcement so that he would not be arrested (in other words, to dissuade her from being a witness). Substantial evidence thus supports the trial court's implied finding that the threat and dissuading a witness counts were based on separate, distinct acts with different objectives.

The trial court also permissibly sentenced defendant to consecutive sentences for the kidnapping and domestic violence counts. "'[A] course of conduct *divisible in time*, although directed to one objective, may give rise to multiple violations and punishment.'" (*People v. Cruz* (2020) 46 Cal.App.5th 715, 738.) Defendant's acts were sufficiently "'temporally separated'" to afford him the "'opportunity to reflect and to renew his . . . intent before committing the next'" offense. (*People v. Deegan* (2016) 247 Cal.App.4th 532, 542.) Defendant hit, choked, and threatened B.L. in her apartment before she fled.

11

Defendant followed B.L. as she went outside the apartment, down the stairs, and about 100 feet to her parked car. Defendant then unlocked the car, punched B.L. repeatedly in the face, pulled her out of the car, and ordered her to go back upstairs. When they got back to the apartment, defendant again repeatedly punched B.L. in the face.

By the time defendant kidnapped B.L., he had already punched, choked, and threatened to kill her. After he successfully kidnapped her by forcing her back into the apartment, he continued beating her. Substantial evidence thus supports the trial court's implied finding that the kidnapping and domestic violence counts were sufficiently divisible and separately punishable. We therefore affirm the trial court's imposition of consecutive sentences for defendant's four convictions.

C. *Upper Term*

Defendant contends the upper term imposed on the kidnapping count must be vacated and the matter remanded for resentencing under recently enacted Senate Bill No. 567. We conclude any sentencing error was harmless under *Lynch.*

The trial court explained its reasons for imposing the upper term for the kidnapping count as follows: "You were on probation for domestic violence against the same victim that you dragged out of the car and that you beat the crap out of her. Those photographs showed to me, man, it was so horrible. Her eyes were completely shot dark. She thought she was going to die that day. You may not remember that, but this victim will never ever forget that. She thought she was a goner that night. For that, the [c]ourt will sentence you to the upper term of eight years."

12

From this statement, we concluded in our prior opinion that the trial court imposed the upper term for two reasons: (1) defendant was on probation for domestic violence against the same victim when he committed his current offenses, and (2) the current offenses "involved great violence" or "great bodily harm." The parties do not challenge this interpretation.

While this appeal was pending, section 1170, subdivision (b) "was amended [by Senate Bill No. 567] to prohibit imposition of an upper term sentence unless aggravating circumstances justify that term and the facts underlying any such circumstance, other than a prior conviction, 'have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial.'" (*Lynch*, *supra*, 16 Cal.4th at p. 742.) These amendments apply retroactively when, as here, they went into effect while a defendant's appeal was pending. (*Id.* at pp. 748-749.)

*Lynch* created a two-part test to assess harmlessness under these circumstances. First, the reviewing court must determine whether a jury would have found true beyond a reasonable doubt "all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute." (*Lynch*, *supra*, 16 Cal. 4th at p. 743.) If not, then the matter must be remanded for resentencing. (*Ibid.*) If the first prong of the test is satisfied, the reviewing court must then determine whether the record "clearly indicates" that the trial court would have imposed the same sentence under the new section 1170, subdivision (b), as amended by Senate Bill No. 567. (*Lynch*, *supra*, at pp. 772-773.)

13

We assume without deciding that the first prong of *Lynch*'s two-part test is satisfied because we conclude its second prong is not.

The second prong requires us to decide whether the record "clearly indicates" that the trial court would have imposed the upper term under amended section 1170, subdivision (b). We agree with the People that the trial court's statements explaining its reasoning for selecting the upper term "demonstrated [the court's] utter disdain for [defendant's] actions." But those brief statements do not *clearly indicate* that the trial court would impose the upper term under amended section 1170, subdivision (b). (See *People v. Salazar* (2023) 15 Cal.5th 416, 419.) The trial court's statements are not "the kind of definitive statements that [our Supreme Court has] found to clearly indicate [a trial court] would not impose a lesser sentence under any circumstances." (*Lynch*, *supra*, 16 Cal 5th at p. 777.) Nor does anything else in the trial court's sentence itself suggest the court would not impose a lesser sentence on remand. (See *People v. Salazar*, *supra*, at p. 431 ["Mere reliance on the length of the original sentence and attendant decisions, such as imposing consecutive sentences, imposing middle or upper term sentences, or declining to strike enhancements, is not sufficient to provide a clear indication of what a sentencing court might do on remand if it had been fully aware of the scope of its discretionary powers."].) On this record, it would be speculative to try to divine what the trial court might do on remand under amended section 1170, subdivision (b). (See *id*. at p. 425; *Lynch*, *supra*, at p. 777.) As a result, remand is appropriate.

On remand, defendant is entitled to a jury trial on aggravating circumstances. After that trial (assuming it occurs), the trial court is directed to fully resentence defendant under the current law.

D. *Restitution Fines*

Relying on *People v. Dueñas* (2019) 30 Cal.App.5th 1157 (*Dueñas*), defendant argues the trial court unconstitutionally imposed the $3,000 restitution fine and $678.98 in restitution to the California Victim Compensation Board. He contends the case should be remanded so that he may request a hearing on his ability to pay the fines and fees.

*Dueñas* was decided over two years before defendant's sentencing hearing, yet he did not object to the imposition of restitution. We stand by the holding in our prior decision that defendant forfeited any *Dueñas* argument. (*People v. Greeley* (2021) 70 Cal.App.5th 609, 624 [holding *Dueñas* argument forfeited because sentencing occurred months after *Dueñas* was decided]; *People v. Nelson* (2011) 51 Cal.4th 198, 227 [holding defendant forfeited challenge to $10,000 restitution fine because at the time "the law called for the court to consider a defendant's ability to pay in setting a restitution fine, and defendant could have objected at the time"].) But because we vacate defendant's sentence and remand for resentencing, we need not discuss the issue further. We also need not address the uncontested errors in the sentencing minute order and abstract of judgment concerning fines and fees. Defendant may raise any fine or fee issue on remand.

IV.

DISPOSITION

The judgment of conviction is affirmed.  Defendant's sentence is vacated and the matter is remanded to give defendant the opportunity for a jury trial on aggravating circumstances only.  After that trial, should it occur, the trial court is directed to fully resentence defendant under the current law.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


CODRINGTON
J.

We concur:


MILLER
Acting P. J.


FIELDS
J.